Filed 7/11/14  In re Thomas H. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re THOMAS H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. THOMAS H., Defendant and Appellant. | A139248 (Alameda County Super. Ct. No. SJ12018653) **ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

The opinion previously filed on June 27, 2014, is modified as follows:

1.  On page 8, the first sentence of third paragraph, after "In any event," the word "even" is inserted to read:  "In any event, even if erroneous."

2.  On page 9, the last sentence before the heading "DISPOSITION" (beginning with "In short," and ending with "Jesse.") is deleted.  In its place, the following is added:

"The juvenile court obviously found M.E.  not credible, as it sustained the petition alleging his participation in the robbery.  We conclude beyond a reasonable doubt that any error in admitting M.E.'s statement did not contribute to the juvenile court's decision, that is, that any such error was

1

" ' "unimportant in relation to everything else the [court]considered on the issue in question, as revealed by the record," ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 463, quoting *People v. Neal* (2003) 31 Cal.4th 63, 86.)

The petition for rehearing is denied.  There is no change in judgment.


Dated: _____        _____P.J.


2

Filed 6/27/14  In re Thomas H. CA1/2 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re THOMAS H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS H.,<br><br>        Defendant and Appellant. | A139248<br><br>(Alameda County<br>Super. Ct. No. SJ12018653) |

Thomas H. appeals from juvenile court orders finding he committed a robbery while personally using a firearm.  He contends the court violated his constitutional right to confrontation by admitting the pretrial statement of an accused co-responsible in the alleged offense.  We affirm.

**STATEMENT OF THE CASE**

On May 14, 2013, a wardship petition was filed alleging that 16-year-old appellant, already a ward of the court,[1] had committed a robbery (Pen. Code, § 211) while personally using a firearm (Pen. Code, § 12022.53, subd. (b)).  The petition was subsequently amended to add a second count alleging possession of a firearm in a school zone (Pen. Code, § 626.9, subd. (b)).

---

[1] Appellant had two previously sustained wardship petitions for burglary (Pen. Code, § 459), from May and July 2012.

1

The jurisdictional hearing began on June 12. The court denied appellant's motion to exclude statements made to the police by M.E., who was charged in the same incident and a subject of the same jurisdictional hearing. On June 14, the court found true the allegations of robbery and personal use of a firearm. It made no finding on the allegation of possession of a firearm in a school zone.

On June 28, the court continued appellant as a ward and committed him to the custody of the probation officer for placement in a suitable foster home or facility. The maximum time of confinement, for the current and previously sustained petitions, was found to be 17 years and eight months.

Appellant filed a timely notice of appeal on July 12, 2013.

## STATEMENT OF FACTS

Sixteen-year-old Jesse E. testified at the jurisdictional hearing that on May 13, 2013, after his first period class at Oakland High School, he met up with appellant, M.E. and Charles S. to "go see about a gun" for his friend "John," who did not go to that school. On a prior occasion, Jesse had told appellant he knew someone who was trying to get a gun when appellant showed him a "grayish" revolver about six inches long. The four walked to the bathroom in the cafeteria. In the bathroom, Jesse was standing two or three feet from appellant, by the stalls, and the others were standing four or five feet away. Appellant pulled a gun from his "side waist," cocked it and held it to Jesse's chest with his right hand while going through Jesse's jacket pockets with his left hand. M.E. went through Jesse's pants pockets, pulling them inside out. They took from Jesse $11 (two $5 bills and a $1 bill), his phone (a "Cool Pad, Metro"), headphones, and a chapstick. Jesse was scared, thinking he might be killed if he resisted. The three left through one door to the bathroom and Jesse went out the other door. In a video recording played for the court, Jesse identified himself, appellant, M.E. and Charles walking into the bathroom at 9:30:53 a.m. Jesse's pockets were "in" and his jacket was zipped up. Another segment of the video, time stamped 9:31:55, showed Jesse leaving the bathroom with his jacket zipped down and his pants pockets pulled out.

2

Using a friend's phone, Jesse called his mother and told her he had been robbed in the bathroom at gunpoint. She told him to go to the office but he did not go until after she called the school or the police and called him back, telling him to go to the office because the police were looking for him. At the office, he spoke with two police officers and two vice principals, telling them he had been robbed in the bathroom. One of the vice principals had him look through yearbooks and Jesse pointed out appellant and Charles, then the vice principal showed Jesse a single photograph of M.E. Jesse circled the photographs and signed his name and the date. At the hearing, shown the photograph of appellant he had identified, Jesse said this was who robbed him.

Jesse testified that he had previously been dishonest about how the robbery occurred: He told the police that he had walked into the bathroom alone and then, when he came out of the stall, he was surrounded by three people who robbed him. He did not tell the truth originally because he was "scared of getting in trouble with the police" and thought they were going to take him to jail. On cross-examination, Jesse acknowledged that he told the same lie to his mother and the school principal, and subsequently to the defense investigator and at a court hearing, after swearing to tell the truth. He said in his police statement that he had been robbed by " 'three male blacks,' " not revealing that he had known M.E. for years and had been friends with him. The day before the jurisdictional hearing, someone from the Alameda County District Attorney's office showed Jesse the video documenting him walking into the bathroom with the other three individuals. He described the incident truthfully only after being shown this video. Jesse also lied when he told the police he was in the bathroom during the passing period between first and second period; in fact, it was during second period.

Jesse testified that his phone was in good condition when it was taken. When the police returned it to him later, it was broken, the screen cracked so nothing could be seen on it.

Oakland Police Officer Joe Mercado responded to Oakland High School and met with Jesse, who said he had been accosted by three males as he stepped out of the bathroom stall, one of the males holding a gun to his chest and the other two going

3

through his pockets and taking his belongings. Jesse identified the perpetrators by name and Mercado verified with school staff that the three suspects were in school that day. The school was placed on lockdown, preventing anyone from leaving or entering. About 10 minutes later, Mercado received a broadcast indicating that appellant was leaving the campus. He and several other officers apprehended appellant outside the school. Appellant was not in possession of the firearm or any of the items Jesse had reported stolen.

Charles S. and M.E. were removed from class. Officer Kent Kenery detained Charles, read him his *Miranda* rights and placed him in his patrol vehicle. Charles refused to give a statement. Kenery then read M.E. his rights; M.E. also declined to give a statement. Kenery conducted a search, finding $216 in M.E.'s pocket and, in his backpack, a clear plastic bag containing a green leafy substance suspected to be marijuana, and a scale disguised to look like an iphone. The $216 found in M.E.'s possession included a $1 bill and two $5 bills. At some point, someone handed Kenery a black cell phone with a cracked face. The phone was taken into police custody. Neither Charles nor M.E. were in possession of a gun or the headphones or chapstick taken from Jesse.

As Kenery escorted M.E. to another officer's vehicle, M.E. spontaneously stated that he "knew what was going on in the bathroom." M.E. said that he was in the bathroom to sell weed and saw appellant and Jesse "negotiating the sale of a firearm." During the negotiation, appellant reached into his backpack, pulled out a handgun and robbed Jesse. Appellant took some money from Jesse and Charles, who was also in the bathroom, and checked Jesse's pockets. M.E. told Kenery that appellant said Jesse had approximately $300 with him and, after the incident, said that he "handed off" the pistol to a person named Burt. M.E. made these statements in a running narrative; Kenery did not ask him any questions. Kenery testified that M.E. was calm and did not seem nervous.

Mercado and other officers searched the school for the gun and the property Jesse reported taken. No gun was found.

4

# DISCUSSION

Appellant contends M.E.'s statements to Officer Kenery should have been excluded under *Crawford v. Washington* (2004) 541 U.S. 36, as out-of-court testimonial statements not subject to cross examination. Under *Crawford*, the Sixth Amendment of the United States Constitution prohibits admission of testimonial statements made outside of court unless the declarant is unavailable and the defendant has had a prior opportunity to cross examine the declarant. (*Crawford,* at pp. 53-54, 57.) "It is the 'primary purpose of creating an out-of-court substitute for trial testimony' that implicates the confrontation clause. ([*Michigan v.*] *Bryant* [(2011)] 562 U.S. [ __ ] [131 S. Ct. [1143,] 1155] [(*Bryant*)].) Consequently, if a statement is not offered for its truth, or is nontestimonial in character, the confrontation clause is not a bar to admission. Thus, the touchstone questions are whether a statement is hearsay offered against a criminal defendant, whether the statement is otherwise admissible under a hearsay exception, and, if so, whether the statement is testimonial." (*People v. Blacksher* (2011) 52 Cal.4th 769, 813 [(*Blacksher*)].)

The juvenile court found M.E.'s statement admissible against appellant under the spontaneous statement exception to the hearsay rule. "A 'spontaneous utterance[]' is considered trustworthy, and admissible at trial despite its hearsay character, because 'in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief.' (*People v. Farmer* (1989) 47 Cal.3d 888, 903.) Evidence Code section 1240 provides that '[e]vidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.' For admission of a spontaneous statement, ' "(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and

5

the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) Whether the statement was made before there was 'time to contrive and misrepresent' is informed by a number of factors, including the passage of time between the startling occurrence and the statement, whether the statement was a response to questioning, and the declarant's emotional state and physical condition. (*People v. Lynch* (2010) 50 Cal.4th 693, 750; *People v. Raley* (1992) 2 Cal.4th 870, 894.)" (*People v. Clark* (2011) 52 Cal.4th 856, 925.) "Because the second requirement relates to the peculiar facts of the individual case more than the first or third does (see 6 Wigmore, Evidence (Chadbourn rev. ed. 1976) § 1750, pp. 202-222 [hereafter Wigmore]; *People v. Jones* (1984) 155 Cal.App.3d 653, 662, following Wigmore), the discretion of the trial court is at its broadest when it determines whether this requirement is met (see *Showalter v. Western Pacific R.R. Co.* [(1940)] 16 Cal.2d [460,] 468-469)." (*Poggi*, at pp. 318-319.)

The juvenile court apparently determined that M.E. was still under the stress and excitement of the robbery and his arrest when he volunteered his statement to the police officer. Despite the deference with which we must regard the court's discretionary determination, we have some question.[2] Officer Kenery described M.E. as calm and not nervous when he made his statement. Moreover, while he incriminated himself with respect to selling marijuana—after having been found in possession of marijuana, a scale, and a significant amount of cash—M.E. denied participation in the robbery. Both the prosecutor and the court necessarily rejected the credibility of the latter portion of the statement: The prosecutor alleged M.E. committed the robbery and the court sustained

---

[2] Respondent views appellant as having conceded below that M.E.'s statement was spontaneous because he so characterized it in his memorandum of law arguing the statement was testimonial. Characterizing the statement as "spontaneous" in the sense of "volunteered," however, is not a concession that the statement is "spontaneous" within the meaning of the Evidence Code section 1240 hearsay exception, a point appellant's memorandum did not mention.

the petition. Had the court believed M.E.'s statement altogether uninhibited, unreflective and uncontrived, presumably it would have believed M.E. observed but did not participate in the robbery. Instead, the court appears to have accepted that the statement could be sufficiently unreflecting to be trustworthy as to appellant's actions yet contrived and self-serving as to M.E.'s own.

We need not resolve whether this contradiction takes the statement outside the purview of Evidence Code section 1240. As will be seen, even if the statement was inadmissible against appellant on this basis, reversal would not be required.

Appellant's main argument, as we have said, is that the statement should have been excluded as testimonial under *Crawford.* "The *Crawford* court did not give a comprehensive definition of the term 'testimonial' and subsequent cases have addressed how the rule should be applied." (*Blacksher, supra,* 52 Cal.4th at p. 811.) In the context of statements made to the police, the United States Supreme Court has explained, " 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " (*Bryant*, *supra*, 562 U.S. at p. ___ [131 S.Ct. 1143, 1154], quoting *Davis v. Washington* (2006) 547 U.S 813, 822.)

In determining the primary purpose with which a statement is given or obtained, the court is to "objectively evaluate the circumstances of the encounter along with the statements and actions of the parties," asking what purpose " 'reasonable participants would have had, as ascertained from the individuals' statements and actions' in the given situation." (*Blacksher, supra,* 52 Cal.4th at p. 813, quoting *Bryant,* at p. ___ [131 S.Ct. at p. 1156].) One factor the court is to consider is whether an ongoing emergency appears to exist, as an ongoing emergency "focuses the participants on something other than obtaining evidence for trial." (*Blacksher,* at p. 814, quoting *Bryant*, *supra*, 562 U.S. at p. ___ [131 S.Ct. at p. 1157].) "Whether an ongoing emergency exists is a 'highly context-

7

dependent inquiry.' " (*Bryant,* at p. ___ [131 S. Ct. at p. 1158].) Even when a threat to an initial victim is over, a threat to first responders and the public may still exist. The type of weapon involved may expand or limit the duration and scope of the emergency. A situation created by the use of fists may involve less ongoing danger than the use of a firearm. (*Ibid.*)" (*Blacksher,* at p. 814.) And "regardless of the existence of an emergency, the informality of the statement and the circumstances of its acquisition are important considerations. Inquiries that are conducted in a disorganized way and in turbulent circumstances are distinguishable from a jailhouse interview, as in *Crawford*, or the sequestered and formal preparation of an affidavit, as in *Hammon v. State* [decided with *Davis v. Washington, supra,* 547 U.S. 813]. (*Bryant,* at p. ___ [131 S. Ct. at p. 1160].)" (*Blacksher,* at p. 815.)

At the very least, it is questionable whether M.E.'s statements to the police officer was testimonial. Although it related events that had happened in the past—the robbery had concluded—it addressed what was still an ongoing emergency situation in that the gun reportedly used in the robbery had not been located and the school was on lockdown while a search for the weapon was being conducted. M.E. gave the officer information potentially useful in the search, as he related appellant saying he had handed off the gun to a person named Burt. Although he had been taken into custody and given *Miranda* warnings, M.E. was not being questioned by the officer when he made his statements, and the overall situation was still turbulent.

In any event, if erroneous, admission of M.E.'s statements was not prejudicial. Jesse's testimony was fully sufficient to establish that the robbery occurred. While appellant contends Jesse's credibility was thoroughly undermined by his demonstrated lies about the events, Jesse explained why he tried to hide the fact that he entered the bathroom together with appellant, his trial testimony did not differ from his previous statements as to the manner in which the robbery was perpetrated, and the video provided corroboration in that it showed him leaving the bathroom with his jacket zipped down and his pockets pulled inside out after having entered with the jacket zipped up and his pockets intact. Significantly, M.E. was no more credible a witness than Jesse. In fact, he

8

was less credible, in that his statement was self-exonerating as to the robbery he was alleged to have committed along with appellant. In short, there was no reason M.E.'s statement would have convinced the juvenile court the robbery occurred if it did not already believe Jesse.

## DISPOSITION

The orders are affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Brick, J.*

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9